HERRING, Judge,
for the Court:
¶ 1. Charles McNeil appeals from the jury verdict and an award of $121,000 to the Appellee, Yerlon R. Bourn, Sr., in a personal injury lawsuit which was conducted in the Circuit Court of Forrest County, Mississippi. McNeil admitted liability and the issues at trial were limited to the damages suffered by Bourn as a result of a traffic accident. We affirm.
I. THE FACTS
¶2. On January 7, 1992, an eighteen-wheeler tractor and trailer loaded with pulp *665 wood and driven by Charles McNeil collided into the driver’s side of a 1979 GMC van driven by Verlon Bourn. Bourn was unable to avoid the accident by steering his vehicle out of the path of the eighteen-wheeler. McNeil admitted liability prior to trial, and the only issue for the jury in this case involved damages. Bourn, who was forty-seven years old in 1992, testified that he had experienced back, neck, and leg pain for a number of years prior to the accident. However, the pain in his neck, back, and legs intensified after the collision on January 7, 1992.
¶3. Bourn testified that during the accident he lunged toward the passenger seat in his vehicle, and when he did so, he tore a muscle in one of his arms. Immediately following the accident, Bourn complained only of stinging pain in his arm. The next day, however, he experienced lower back pain, numbness, and radiating pain in his heel and in the back of his legs, as well as tenderness in his buttocks. Due to his pain following the accident, Bourn went to see Dr. Ruth Gillespie, his family physician, who admitted Bourn to Forrest General Hospital in Hattiesburg, Mississippi, for tests. The Ap-pellee was hospitalized for two weeks following the accident and received treatment in the form of traction, therapy, and medication. He was also referred to a neurologist for examination and treatment.
¶ 4. At trial, Bourn testified that prior to the accident he had been seeing Dr. Gillespie for at least nine years, not for any particular injury, but for general pain in his neck, back, and legs. Since 1980, Bourn had worked in a liquor store which he also owned. He stated that prior to his accident in 1992, he engaged in all sorts of activities involving his business, which involved standing for long periods of time; loading and unloading liquor from delivery trucks; stocking his shelves; repairing broken pieces of equipment; and attending generally to his customers. During the time prior to the 1992 accident, Bourn stated that Dr. Gillespie would prescribe various pain medications and muscle relaxers for him. Furthermore, because of a college football injury in which he lost a kidney, his doctor was also required to closely monitor his medications in order to protect his one remaining kidney. The record also indicates that at some point in his life, Bourn sustained a gunshot wound. However, the record does not reflect the nature of Bourn’s injury as a result of the gunshot wound or any effect it may have had upon his health at the time of the accident in 1992.
¶ 5. According to the testimony, Bourn injured his back in 1967 while working for Amerada Hess,[1] and the company doctor admitted him to the hospital at that time for the back injury. He also testified that he sustained a whiplash injury as a result of a car accident in the early 1970’s. Later, in 1989, when Dr. Gillespie admitted Bourn into a hospital because of chest pain, she also treated Bourn for back pain at that time, because he was complaining of pain in his neck and back.
¶ 6. As stated, Bourn testified that he was able to perform many physical tasks associated with running his liquor store prior to the 1992 accident, although he took medication for back-related pain. After the accident, however, he was no longer able to perform the same tasks. Because of his pain, Bourn testified that he was forced to hire others to operate his business. Dr. Gary Jackson, an orthopedic surgeon from Hattiesburg, examined and treated Bourn for approximately one and a half years after the accident. Dr. Jackson’s diagnosis was that Bourn had a lumbar sprain, superimposed upon a preexisting condition of degenerative disc disease with arthritis. Dr. Jackson also stated that approximately five percent of individuals diagnosed with a lumbar sprain suffer from chronic pain and never fully recover. Finally, Dr. Jackson testified that in his opinion the lumbar sprain suffered by Bourn was proximately caused by the 1992 truck accident in which he was involved.
¶ 7. At the end of the trial, McNeil moved for a directed verdict on the grounds that the jury should be prohibited from considering *666 Bourn’s claims for future medical bills and loss of future earning capacity because Bourn had failed to meet his burden in establishing these claims by a preponderance of the evidence. The trial court agreed and granted McNeil’s motion for directed verdict on the issues of future medical payments and loss of future earning capacity. Whether or not Bourn would be allowed to recover for past medical bills incurred as a result of the accident, as well as, present, past, and future pain and suffering, and mental anguish was left to be considered by the jury. Written jury instructions were then presented and read to the members of the jury which informed them of the legal issues involved and the guidelines to use in interpreting the evidence presented in the case. Among the instructions given included Jury Instruction No. 5 which reads as follows:
The court instructs the jury that damages is the word which expresses in dollars and cents the injuries sustained by a plaintiff. The damages to be assessed by a jury for personal injury cannot be assessed by any fixed rule, but you are the sole judges as to the measure of damages in any case.
Should your verdict be for Verlon Bourn[2], you may consider the following factors in determining the amount of damages to be awarded as may be shown by a preponderance of the evidence:
1. The type of injuries to the plaintiff, if any, and the length of their duration, and its effect, if any, on the Plaintiffs, Verlon R. Bourn, Sr.’s daily activity.
2. Past, present and future physical pain and suffering and resulting mental anguish, if any,
3. Reasonable medical expenses incurred.
¶ 8. Following closing remarks by counsel, the jury retired to the jury room. However, the trial court inadvertently failed to send the written instructions into the jury room for use by the jury during its deliberations. After approximately two hours, the jury requested a jury verdict form from the trial court for use in rendering its verdict. At this point, the trial court realized that it had neglected to provide the jury with the written instructions, and at that time provided to the jury all of the written jury instructions which had previously been granted by the court and read to the jurors before they retired. McNeil immediately moved for a mistrial and argued that the jury had rendered its verdict without the benefit of the written instructions. The trial court overruled the motion. Within minutes after returning to the jury room with the written instructions, the jury announced that it had reached a verdict and awarded Bourn the sum of $121,000 in damages. After the verdict was announced, McNeil renewed his motion for mistrial which the trial court denied.
¶ 9. McNeil filed a motion for new trial or, in the alternative, a remittitur. During the hearing on the motion, the trial court noted that it had given the jury a precautionary instruction that the jury was not to consider the matter of possible future medical payments to be made by Bourn in arriving at the amount of the verdict. The trial court stated that it did so because Bourn’s counsel had mentioned future medical payments in his closing argument.[3] McNeil’s post-trial motion for relief was denied by the trial court, and thereafter, McNeil perfected this appeal.
II. THE ISSUES
¶ 10. On appeal, McNeil raises the following issues which are taken verbatim from his appellate brief:
I. WHETHER THE JURY VERDICT AWARDING DAMAGES MAY BE PERMITTED TO STAND ALTHOUGH THE JURY DID NOT TAKE THE COURT’S WRITTEN INSTRUCTIONS INTO THE JURY ROOM AS REQUIRED BY MISSISSIPPI RULE OF CIVIL PROCEDURE 51(D), PARTICULARLY WHEN THE INSTRUCTION INFORMED THE JURORS THAT THEY WERE NOT TO AWARD DAMAGES FOR PLAINTIFF’S LOSS OF EARNING CAPACITY OR HIS FUTURE MEDICAL EXPENSES, *667 DESPITE HEARING EVIDENCE AS TO THESE CLAIMS, BECAUSE A DIRECTED VERDICT HAD BEEN ENTERED AS TO THESE TWO ELEMENTS OF PLAINTIFF’S CASE.
II. WHETHER AN AWARD OF $121,-000 FOR LUMBAR STRAIN IS EXCESSIVE, WHEN THE AWARD WAS NOT PERMITTED TO INCLUDE DAMAGES FOR LOSS OF EARNING CAPACITY OR FUTURE MEDICAL EXPENSES, BECAUSE A DIRECTED VERDICT HAD BEEN ENTERED AS TO THESE TWO CLAIMS AND THE JURY DID NOT HAVE THE BENEFIT OF WRITTEN INSTRUCTION TO EXPLAIN THE SPECIFIC ELEMENTS OF DAMAGES FOR WHICH PLAINTIFF WAS PERMITTED TO RECOVER.
III. WHETHER REVERSAL AND REMAND FOR NEW TRIAL, OR ALTERNATIVELY, REMITTITUR IS THE APPROPRIATE REMEDY FOR THE EXCESSIVE VERDICT THAT RESULTED FROM THE JURY’S CONFUSION CAUSED BY THE LACK OF WRITTEN INSTRUCTION AS TO THE ELEMENT OF DAMAGES THAT PROPERLY COULD BE AWARDED.
III. ANALYSIS
¶ 11. We will address each of McNeil’s issues in sequence.
I. DID THE TRIAL COURT ERR IN DENYING THE APPELLANT’S MOTION FOR NEW TRIAL ON THE GROUND THAT IT COMMITTED REVERSIBLE ERROR WHEN IT INADVERTENTLY FAILED TO GIVE THE WRITTEN JURY INSTRUCTIONS TO THE JURY AT THE OUTSET OF ITS DELIBERATIONS?
¶ 12. Following the trial in this case, McNeil filed a timely motion for a new trial, or alternatively for a remittitur, both of which were denied by the trial court. Our standard of review following a trial court’s denial of a motion for new trial is whether or not the trial court abused its discretion in denying the motion. Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 377 (Miss.1997); see also Harvey v. Wall, 649 So.2d 184, 187 (Miss.1995).
¶ 13. The Appellant contends on appeal that reversible error occurred when the trial court inadvertently neglected to give the written instructions to the jury at the outset of its deliberations pursuant to the provisions of Mississippi Rule of Civil Procedure 51(d). Rule 51(d) states:
(d) When Read; Available to Counsel and Jurors. Instructions shall be read by the court to the jury at the close of all the evidence and prior to oral argument; they shall be available to counsel for use during argument. Instructions shall be carried by the jury into the jury room when it retires to consider its verdict.
(emphasis added). Additional support for this rule is found in Uniform Circuit and County Court Rule 3.07 which provides, “All [jury] instructions will be read by the court in whatever order the court chooses, will be available for the attorneys during their argument, and will be carried by the jury into the jury room when they retire to consider their verdict.”
¶ 14. While the Appellant recognizes that the trial court did its best to remedy its mistake by ultimately allowing the jury to have the trial court’s written instructions pri- or to rendering its verdict, McNeil takes the position that the court’s failure to ensure that the jury had its written instructions at the outset of its deliberations is incurable and that he is entitled, at the very least, to a new trial because his ability to receive a fair trial was fatally prejudiced by the court’s inadvertence. McNeil contends that at the time the jurors requested a jury verdict form, they had already decided on the outcome of the case without the benefit of the written jury instruction and that the court’s written instructions were sent to the jury room too late to avoid undue prejudice. Moreover, the Appellant argues that although the trial court’s written instructions directed the jury as to the elements of damages they were allowed to award to Bourn, the Appellant was fatally prejudiced because the jury did not have this written instruction in the jury room to consider prior to reaching its decision, thus hopelessly confusing the jury as to what *668 damages it could consider in reaching its verdict.
¶ 15. McNeil correctly observed that there are no Mississippi cases construing or applying Rule 51(d) on this issue. Generally, in such an instance, we would look to a similar federal rule and its interpretations by the federal courts for guidance. Lowery v. Lowery, 657 So.2d 817, 819 (Miss.1995). Because there is no federal counterpart to our Rule 51(d) in the Federal Rules of Civil Procedure, we therefore look to other jurisdictions for direction on this issue. Nevertheless, it is noteworthy that federal trial procedure requires that a jury be orally instructed but does not require that written instructions be submitted to the jury. As stated in WRIGHT & MilleR, Federal Practice and Procedure:
[i]f the trial court wishes, it may submit a copy of its instructions to the jury, but this is a matter within the court’s sound discretion and most judges elect not to do so. Frequently, the judge will not have written out the entire charge in advance. Some believe that providing the jury a copy of the instructions enhances the danger that the jurors may pick passages out of context contrary to the rule that the jury must consider the charge as a whole.
The trial court may repeat a portion of the charge or give a supplemental charge either at the request of the jury or on the court’s own motion. The court should not give oral or written instructions to the jury in the absence of counsel or without notice first given to counsel, but the right to be advised can be waived and the harmless error rule applies to communications from the court to the jury.
9a Charles Alan Wright & Arthur Miller, Federal Practice and PROCEDURE § 2555 (2d ed.1994). On the other hand, many, but not all state jurisdictions require written instructions to be sent to the jury. See generally, 75 Am Jur 2d Trials § § 1149-1163 (2d ed.1991). Moreover, in the absence of a statute or fixed rule of practice, many appellate courts have ruled that “the trial court, in its discretion, may allow, or refuse to allow, the jury to take the instructions with them when they retire to deliberate;.... ” 89 C. J.S. Trial § 468 (1955).
¶ 16. In Curtis v. Kansas City Public Service Co., 74 S.W.2d 255, 261 (Mo.App.1934), three written jury instructions were not taken to the jury room by the jurors due to the unintentional oversight of defense counsel in failing to return the instructions to the court prior to the jury’s deliberations. All the instructions, including those instructions that physically did not make it to the jury room, had been read to the jury before closing arguments of counsel. Id. The Kansas Court of Appeals explained that the question involved was whether or not the defendant suffered any prejudice as a result of the jury not having the written instructions to consider. Kansas had in effect at that time a statute which provided that jury instructions “shall be carried by the jury to their room for guidance_” Id. at 260. In refusing to reverse the case, the Kansas court concluded that, despite the absence of the three instructions, the jury had been properly instructed on the matters of the case because the written instructions that the jury did take into the jury room adequately instructed the jury. Id. at 262.
¶ 17. In the case sub judice, the Appellant relies on Doane v. Jacobson, 244 F.2d 710, 711 (1st Cir.1957), in which the United States Court of Appeal for the First Circuit explained that giving written instructions to the jury to use during deliberations is a more desirable approach. Additionally, McNeil refers us to Valley Nat’l Bank v. Witter, 58 Ariz. 491, 121 P.2d 414 (1942), where the Arizona court ruled it advisable to allow juries to have written instructions during deliberations so that they may keep those instructions in mind when considering what action to take in a given case.
¶ 18. Our Mississippi Rule of Civil Procedure 51(d) mandates that juries are to be given written jury instructions. In this case, the jury was not given the written instructions as required by the rule when its members retired to deliberate, but did receive the written instructions prior to the jury verdict. In addition, all of the instructions which the trial court granted were read to the jury prior to its deliberations. The record shows *669 and the Appellant agrees that the failure to send the instructions into the jury room was unintentional and accidental. No prejudice was shown to McNeil by this state of events although McNeil speculates that the jury had settled on its verdict prior to receiving the written instructions.
¶ 19. As stated, the record shows that the jury was properly given instructions orally by the trial court before closing remarks. “It is presumed that jurors follow the instructions of the court. Payne v. State, 462 So.2d 902, 904 (Miss.1984); Carter v. State, 450 So.2d 67, 69 (Miss.1984). To presume otherwise would be to render the jury system inoperable.” Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985). While it would have been preferable for the jurors to have had the written instructions in their possession during their entire deliberations as required by Rule 51(d), the trial court’s error did not, in our opinion, prejudice the rights of the Appellant. When the jurors were given the written instructions before they rendered their verdict, Rule 51(d) was substantially complied with. McNeil argues that the verdict was excessive, and that the large award is evidence that the jury was confused as to what damages they could consider, thereby prejudicing his right to a fair trial. We disagree. Although the jury returned with its verdict within minutes after being given the written instructions, there is no evidence that the jurors did not consider the proper elements of damages allowed by the trial court, as McNeil urges.
¶ 20. We are satisfied that the trial court in this case did not abuse its discretion in denying McNeil’s motion for a new trial and that Rule 51(d) was substantially complied with. The trial court properly read the instructions to the jury and when faced with the oversight of neglecting to give the written instructions to the jury, the trial court did what it could to remedy the situation. Any error on the part of the trial court was harmless. “Error is reversible only where it is ‘of such magnitude as to leave no doubt that the appellant was unduly prejudiced.’ ” Estate of Mask v. Elrod, 703 So.2d 852, 859 (Miss.1997) (quoting Davis v. Singing River Elec. Power Ass’n, 501 So.2d 1128, 1131 (Miss.1987)). We rule that the error here was not of such magnitude that McNeil was unduly prejudiced.
II. WHETHER OR NOT THE JURY’S AWARD OF $121,000 TO THE APPEL-LEE WAS EXCESSIVE.
¶ 21. When considering a jury’s award of damages on appeal, we are to determine whether or not there is substantial evidence to support the jury award, or whether or not the award is so large so as to “shock the conscience” of the Court, or is the result of the jury’s bias, passion, or prejudice. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992). The Mississippi Supreme Court has stated:
Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.
Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). The jury’s verdict in a civil case is a finding of fact. Edwards v. Ellis, 478 So.2d 282, 289 (Miss.1985). Even if we think the amount awarded in the verdict is liberal, we are not allowed to supplant our judgment for that of the jury unless we conclude that there was insufficient evidence to support the award of damages or that the verdict was the product of bias, passion, or prejudice. South Central Bell Tel Co., Inc. v. Parker, 491 So.2d 212, 217 (Miss.1986).
¶22. McNeil contends on appeal that absent those claims on which the trial court granted a directed verdict, Bourn established only minimal damages and that the majority of Bourn’s back problems were pre-existing. He argues that the verdict is excessive and is further evidence of the jury’s confusion regarding the elements of damages. Bourn counters (1) that the jury was given the correct instructions regarding the elements of his damages, albeit orally and not written, and late in its deliberations; (2) that no argument was made concerning the two issues on which McNeil was granted a directed verdict and thus the jury was not confused; and (3) that the jury’s verdict was not exces *670 sive and compensated the Appellee for his injuries.
¶ 23. We begin our analysis on this issue with the basic rule that Bourn, the injured party, had the burden of going forward with sufficient evidence to prove his damages by a preponderance of the evidence. TXG Intrastate Pipeline Co. v. San Gabriel Devel. Corp., 716 So.2d 991, 1016 (Miss.1997); Boling v. A-1 Detective & Patrol Serv., Inc., 659 So.2d 586, 590 (Miss.1995). In determining whether or not Bourn met his burden in establishing his damages involving his present, past, and future pain and suffering, mental anguish and past medical expenses, we are required to view the evidence in a light most favorable to the jury’s verdict, giving Bourn the benefit of all favorable inferences that may reasonably be drawn. Odom, 606 So.2d at 118.

1.Medical Bills

¶ 24. Bourn submitted medical bills at trial relating to his accident injuries which totaled $22,337.11. McNeil argues that not all of these expenditures were due to the accident in question. The record, however, does not support McNeil’s assertion. While Bourn admits that he had a pre-existing injury that required medical treatment, McNeil failed at trial to distinguish which medical bills were not related to the exacerbation of his pre-existing back condition.
¶ 25. Giving Bourn all reasonable inferences that can be reasonably drawn by the evidence on the past medical bills, we are unable to conclude that Bourn failed in his burden to establish by a preponderance of the evidence that the medical bills which he submitted at trial were proximately caused by aggravated back injury which he suffered from the accident in question. Since there was no categorical breakdown in the award given by the jury in this case, we would only be speculating if we attempted to determine what portion, if any, of the $22,337.11 in medical expenses were attributable to back problems suffered by Bourn prior to the accident.

2. Mental anguish.

¶ 26. At trial, Bourn testified that he believed he suffered from mild depression as a result of the accident. Bourn attributed his depression to the fact that he could no longer perform the functions of running his liquor store and that he could not carry on his normal home activities. Dr. Gillespie testified that in her opinion, Bourn became much more depressed after the accident. Moreover, there was no testimony or other evidence presented to rebut Bourn’s claim that he suffered from depression as a result of the accident. Thus, we are again unable to conclude that Bourn failed to carry his burden involving this element of damages.

3. Pain and suffering.

¶ 27. Bourn testified extensively in regard to his increased and intensified pain following the accident. While conceding that he had had a long history of back, neck, and leg pain, Bourn stated that his pain increased significantly after the truck accident. In addition, he described for the jury those duties and activities that he was no longer able to perform because of increased pain. Dr. Gillespie confirmed that after the date of the accident, Bourn’s complaints of pain were more constant and pronounced. In the past, she stated that with medication, she was always able to get Bourn “up and going.” Dr. Gillespie stated that before the accident, even while experiencing pain, he was able to conduct his everyday activities which included operating his liquor store business and caring for his ailing mother. However, after the accident, Bourn’s complaints of pain increased, and she had to admit Bourn to a hospital to alleviate his pain for the first time. In Dr. Gillespie’s opinion, Bourn would continue to suffer increased, constant and persistent pain as a result of his injury from the accident in 1992 for the rest of his life.
¶ 28. We rule that substantial evidence was presented which established that Bourn’s injury from the January, 1992, accident aggravated his pre-existing back injury. Dr. Jackson, the orthopedic physician who examined and treated Bourn, testified that Bourn had a lumbar strain superimposed upon his pre *671 existing degenerative disc disease along with arthritis. Giving Bourn all reasonable inferences, we cannot say that he failed to carry his burden of establishing his damages in regard to his pain and suffering which he experienced as a result of the injury he sustained in the collision with McNeil.
¶ 29. McNeil argues that the jury was confused because it heard testimony during trial regarding Bourn’s loss of future earnings and medical costs which he would incur in the future. Although the trial court orally instructed the jury to disregard future medical costs in arriving at its verdict, McNeil contends that the written instruction informing the jurors as to the elements of damages which they were permitted to consider were not received by the jury until too late in their deliberations, and thus too late to have any meaningful effect on the jury verdict. We have already ruled that the trial court did not commit reversible error when it belatedly furnished the written instructions to the jury. Moreover, it is noteworthy that during closing arguments and upon McNeil’s objection to a reference made by Bourn to future medical expenses, the trial court specifically informed the jury that future medical bills were not to be considered in its award. See Parker v. Jones County Community Hosp., 549 So.2d 443, 446 (Miss.1989) (holding that the jury is presumed to follow instructions given to them by the trial judge).
¶30. While the verdict rendered by the jury in this case may not have been the one that this Court would have rendered, it is not so excessive so as to shock the conscience of this Court or one that no impartial hypothetical juror could have rendered. Odom, 606 So.2d at 118. Thus, we rule that this assignment of error has no merit.
III. WHETHER REVERSAL AND REMAND FOR NEW TRIAL, OR ALTERNATIVELY, REMITTITUR IS THE APPROPRIATE REMEDY IN THIS CASE?
¶31. Because we have decided to affirm the jury’s verdict and the lower court’s judgment in this action, we rule that this assignment of error is without merit.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. STATUTORY PENALTIES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.

. The record does not provide the nature or type of work which Bourn performed for the company.

. It should be noted that the trial court granted Bourn a peremptory instruction on the issue of liability.

. The record on appeal in this case does not contain a transcript of the closing arguments.