CARLTON, J.,
Concurring in Part and Dissenting in Part:
¶ 33. I concur in part and dissent in part with respect to the majority’s opinion. I concur with the majority in affirming the jury’s verdict assessing damages against DC General and the trial court’s judgment entered on the jury’s verdict. I, however, submit that the trial court abused its discretion in failing to grant the motion filed by Slay Steel for an additur or, alternatively, a new trial on damages. The verdict of the jury lies against the overwhelming weight of the evidence.[1]
¶ 34. The evidence shows that a purchase order was issued January 15, 2008, by DC General to Slay Steel for the fabrication of steel. The issuance of the purchase order constituted the purchase of fabricated steel by DC General from Slay Steel, and Slay Steel was obligated to perform by providing the fabricated steel, as stated in the purchase order, within a reasonable time of issuance of the purchase order.[2]
¶ 35. The record shows that upon receipt of the purchase order, Slay Steel performed by purchasing steel to fulfill the purchase order, and payment was due to DC General upon its receipt of the invoice from Slay Steel.[3] Payment was due within *588 a reasonable time of receipt of the invoice[4] showing performance of the terms of the purchase order issued by DC General.[5]
¶ 36. While the purchase order constituted a purchase by DC General, the purchase order identified the delivery date of the fabricated steel as “TBD,” with partial deliveries as required by job progress.[6] Slay Steel had already performed under the requirements of the January 2008 purchase order issued by DC General to Slay Steel for fabricated steel. Slay Steel performed as required within a reasonable time of receipt of the purchase order by purchasing steel for fabrication to be delivered at some later time. The subsequent letters at issue occurring in June 2008 and July 2008 reflect attempts to mitigate the losses in the costs of the steel already ordered by DC General, but these letters fail to extinguish the preexisting rights to recovery for prior performance of the terms of the purchase order.[7] The purchase order issued to Slay Steel had already been performed at that point, and the date of delivery was the only issue to be determined. I, therefore, submit that the trial court abused its discretion in failing to grant an additur or to grant Slay Steel’s motion for a new trial on damages.
¶ 37. In addressing the overwhelming weight of the evidence in this case, I further acknowledge Plaintiffs Exhibit 1, submitted at trial, and the other evidentiary exhibits, including the AIA documents incorporated into the contract at issue. The AIA document and its relevant provisions contain the requirements and conditions for termination in the document’s Article 14.[8] A review of that document shows that a termination by the owner for the owner’s convenience requires written notice, and that the termination is only effective as to work not yet performed after the effective notice. This provision in the AIA document is consistent with Mississippi Code Annotated section 75-2-106 (Rev.2002) on terminations. Section 75-2-106 recognizes that only obligations that are still executo-ry may be discharged, but that rights based upon prior performance survive.[9] In my view, the damages awarded to Slay Steel contradict the overwhelming weight of the evidence. See Miss.Code Ann. § 11-1-55 (Rev.2002).
¶ 38. Based on the foregoing, I concur in part and dissent in part with respect to the majority’s opinion.

. See Miss.Code Ann. § 11-1-55 (Rev.2002); see generally Dedeaux v. Pellerin Laundry, Inc., 947 So.2d 900, 903-09 (¶¶ 7-16) (Miss.2007); Cash Distrib. Co. v. Neely, 947 So.2d 317, 324-26 (¶¶ 14-20) (Miss.Ct.App.2006).

. See Miss.Code Ann. § 75-2-301 (Rev.2002) (identifying obligations of the buyer and seller); Miss.Code Ann. § 75-2-206 (Rev.2002) (providing that an order to buy goods for prompt or current shipment invites acceptance and discussing how acceptance is made).

. See generally APAC-Miss., Inc. v. Goodman, 803 So.2d 1177, 1183 (¶ 20) (Miss.2002); O’Neal Steel Co. v. Leon C. Miles, Inc., 187 So.2d 19, 25 (Miss.1966); see also Miss.Code Ann. § 75-2-106 (Rev.2002) (addressing contracts, contract sales, and contract termination and providing that upon termination, "all obligations which are still executory on both sides are discharged!)] but any right based on prior breach or performance survives”); Miss.Code Ann. § 75-2-209 (Rev. 2002) (addressing modification of contracts and providing in the comment that the test of good faith applies to modifications and includes "observance of reasonable commercial standards of fair dealing in the trade”).

. See Miss.Code Ann. § 75-2-301 (general obligations of the parties); Miss.Code Ann. § 75-2-206 (providing that an order to buy goods invites acceptance).

. See Plaintiffs Exhibit 1 (AIA document incorporated into the contract between the parties).

. See Miss.Code Ann. § 75-2-204 (Rev.2002) ("Even though one or more terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.").

. See Miss.Code Ann. § 75-2-105 (Rev.2002); Miss.Code Ann. § 75-2-301; see also Goodman, 803 So.2d at 1183 (¶ 20); O’Neal Steel, 187 So.2d at 25.

. See Plaintiff's Exhibit 1.

. See Miss.Code Ann. § 75-2-209 cmt. (modification fails to include a unilateral termination or cancellation as defined in section 75-2-106).